1
2
3
4
5

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT TACOMA

6
7
8
9
10
11

| | |
|---|---|
| VERA I. DAHLIN,<br><br>                              Plaintiff,<br><br>        v.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security,<br><br>                              Defendant. | Case No. 3:10-cv-05278-RBL-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for April 1, 2011 |

12
13
14
15
16
17
18
19
20
21
22

        Plaintiff has brought this matter for judicial review of defendant's denial of her

applications for disability insurance and supplemental security income ("SSI") benefits.  This

matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §

636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v.

Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the

undersigned submits the following Report and Recommendation for the Court's review,

recommending that for the reasons set forth below, defendant's decision to deny benefits be

reversed and that this matter be remanded for further administrative proceedings.

### FACTUAL AND PROCEDURAL HISTORY

        On December 19, 2006, plaintiff filed applications for disability insurance and SSI

23
24
25
26

benefits, alleging disability as of January 21, 2005, due to a ventral hernia, urine incontinence,

frequent belching, being overweight, insomnia, and depression.  See Tr. 13, 75, 105.  Both her

applications were denied upon initial administrative review and on reconsideration.  See Tr. 13,

REPORT AND RECOMMENDATION - 1

46, 51, 53.  On March 17, 2009, a hearing was held before an administrative law judge ("ALJ"), at which plaintiff, represented by counsel, appeared and testified, as did a medical expert and a vocational expert. See Tr. 13, 20-41.

On April 21, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled. See Tr. 13-19.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on February 18, 2010, making the ALJ's decision defendant's final decision. See Tr. 1; see also 20 C.F.R.§ 404.981, § 416.1481.  Plaintiff filed a complaint in this Court on April 23, 2010, seeking judicial review of the ALJ's decision. See ECF #1-#3.  On July 23, 2010, the administrative record was filed with the Court. See ECF #11.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits or, in the alternative, for further administrative proceedings, because the ALJ erred: (1) in not identifying all of her "severe" limitations; (2) in evaluating the medical evidence in the record; (3) in assessing his credibility; (4) in assessing her residual functional capacity; (5) in finding she could return to her past relevant work; and (6) in not finding her unable to perform other jobs existing in significant numbers in the national economy.  The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while the ALJ's decision should be reversed, this matter should be remanded to defendant for further administrative proceedings.

DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).

REPORT AND RECOMMENDATION - 2

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.      The ALJ's Step Two Determination

        Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the evaluation process ends. See id. At step two of the sequential disability evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520, § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

        An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that his "impairments or their symptoms affect [his] ability to perform basic work activities." Edlund v. Massanari, 253 F.3d

REPORT AND RECOMMENDATION - 3

1152, 1159-60 (9th Cir. 2001); <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1998).  The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. <u>See Smolen</u>, 80 F.3d at 1290.

In this case, the ALJ found plaintiff had "severe" impairments consisting of depression, posttraumatic stress disorder, obesity and a recurrent ventral hernia. <u>See</u> Tr. 15.  Plaintiff argues the ALJ erred in failing to find she suffered from a somatoform disorder and that this disorder constituted a severe impairment.  The Court agrees.  Plaintiff was diagnosed with such a disorder by Jack M. Litman, Ph.D., in mid-August 2006. <u>See</u> Tr. 262.  Although the ALJ did mention the evaluation report completed by Dr. Litman at that time, he failed to note this diagnosis. <u>See</u> Tr. 18.  As such, it is not clear that the ALJ actually considered it.

While Dr. Litman appears to be the only medical source to have given such a diagnosis, it still constitutes significant probative evidence that the ALJ was required to consider. <u>See Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (ALJ must explain why "significant probative evidence has been rejected."); <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).  Defendant argues the ALJ's failure to expressly discuss the somatoform disorder is harmless error, because neither plaintiff nor Dr. Litman identified any functional limitations stemming from that disorder.  But Dr. Litman did also assess plaintiff with a global assessment of functioning ("GAF") score of 45, which he further expressly noted indicated "[s]erious symptoms" and approximated "borderline intelligence and [a] borderline learning disorder causing future work-related problems." Tr. 262; <u>see also</u> <u>Pisciotta v. Astrue</u>, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (noting GAF score of 41-50 indicates serious symptoms or serious impairment in social or occupational functioning, such as inability to keep job); <u>Cox v. Astrue</u>, 495 F.3d 614, 620 n.5 (8th Cir. 2007).

REPORT AND RECOMMENDATION - 4

It appears, furthermore, that the GAF score Dr. Litman assessed was based at least in part on his somatoform disorder diagnosis. See Tr. 262.  A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta, 500 F.3d at 1076 n.1.  But although a GAF score therefore may not be "essential" to the accuracy of say, the residual functional capacity of a claimant, it still is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007); Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002).  Indeed, as noted above, Dr. Litman himself felt the GAF score to be indicative of serious symptoms that could cause future work-related problems.

Defendant goes on to argue the "very limited" residual functional capacity assessment the ALJ adopted reflected his acceptance of plaintiff's pain complaints.  It is not at all clear, though, as discussed in greater detail below, that the ALJ did fully accept those complaints.  In addition, the only mental functional limitation the ALJ adopted was that plaintiff had the ability to "focus **on small tasks**" and "**[d]ue to fatigue [in part from her depression,] she function[ed] at 80% of a typical person her age**." Tr. 16, 38 (emphasis in original).[1]  Again, though, it is not entirely clear Dr. Litman's indication that plaintiff had serious symptoms that could cause future work-related problems was limited only – or at all – to the above two restrictions.  Accordingly, the Court disagrees with defendant that the ALJ's error in this instance was harmless. See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless only where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion).

---

[1] At the hearing, the ALJ posed a hypothetical question to the vocational expert, in which he stated in relevant part:

> . . . She's got mild depression, which imports a degree of fatigue.  Let's assume that . . . as far
> as the fatigue goes, . . . she's 80 percent as a lady her age without the depression.  And I might
> say I think the weight contributes to the fatigue as well. . . .

Tr. 38.

REPORT AND RECOMMENDATION - 5

II.     The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss all evidence presented" to him or her. Vincent, 739 F.3d at 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).

REPORT AND RECOMMENDATION - 6

Rather, as noted above, the ALJ must explain only why "significant probative evidence has been rejected." Id.; see also Cotter, 642 F.2d at 706-07; Garfield, 732 F.2d at 610.

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.   Dr. Lower, Dr. Doeffler and Ms. Jakovec

Plaintiff challenges the following findings made by the ALJ in discounting the opinions of three of the medical sources in the record:

> Courtney Lower, M.D., a treating physician, indicates that the claimant's ventral hernia with urinary incontinence, abdominal pain, and frequent belching prevents her from participating in employment or employment-related activities. Prognosis for employment is good with bariatric surgery and hernia repair. She opines that claimant can do no lifting and requires frequent access to a restroom. She needs to rest most of the day due to difficulty sleeping. (Exhibit 15F -2, 4, 8, 9, 11, 12, 13, 14, 15, 16, 17, 18). Victoria Jakovec, ACNP, a treating nurse practitioner, and Eric Doeffler, M.D., a treating physician, also opine the claimant's condition prevents her from participating in employment or related activities. (Exhibit 15F -3, 10). The opinions of Dr. Lower, Ms. Jakovec and Dr. Doeffler are not consistent with the claimant's daily activities and are given little weight. As noted above, despite her symptoms she is able to care for her son, walk 6 blocks three times a day, do laundry and household chores, attend church once or twice a month, go to cub scouts with her son on a weekly basis, and swim 2 or 3 times a week (Exhibits 4E, 2F). These activities are consistent with a

REPORT AND RECOMMENDATION - 7

capacity for at least sedentary work with positional changes.  Dr. Lower's
assessment that the claimant can do no lifting is not consistent with her ability
to function independently.  Furthermore, these treating source opinions
involve vocational issues of which they have no expertise.  Greater weight is
given to the opinion of the State agency consultants, who opine the claimant is
capable of sedentary work.  However, in light of the claimant's pain
complaints and her credible testimony concerning limitations in standing,
sitting and walking, we find she is limited to walking 2 blocks at a time,
standing 20 minutes at a time and sitting 30 minutes at a time.

Tr. 17-18.  Specifically, plaintiff argues the ALJ failed to provide valid reasons for rejecting the

opinions of Dr. Lower, Dr. Doeffler and Ms. Jakovec.  The Court agrees.

First, it is not at all clear the activities noted by the ALJ necessarily "are consistent with a

capacity for at least sedentary work with positional changes." Tr. 18.  Sedentary work is defined

in relevant part as follows:

The ability to perform the full range of sedentary work requires the ability to
lift no more than 10 pounds at a time and occasionally to lift or carry articles
like docket files, ledgers, and small tools.  Although a sedentary job is defined
as one that involves sitting, a certain amount of walking and standing is often
necessary in carrying out job duties.  Jobs are sedentary if walking and
standing are required occasionally and other sedentary criteria are met.
"Occasionally" means occurring from very little up to one- third of the time,
and would generally total no more than about 2 hours of an 8-hour workday.
Sitting would generally total about 6 hours of an 8-hour workday. . . .

SSR 96-9p, 1996 WL 374185 *3; see also 20 C.F.R. § 404.1567(a).  While in certain instances a

claimant's ability to do laundry, perform household chores, exercise, engage in social activities,

and take care of a child, may be indicative of an ability to perform full-time sedentary work in

the manner described above, the record does not definitively show such is the case here.  Rather,

it indicates plaintiff's activities of daily living – or the amount of time and manner in which she

performs them – are fairly limited. See Tr. 29, 32-33, 112-18, 139, 149, 153, 190, 260.

In addition, as pointed out by plaintiff, the record does not unambiguously reflect that she

is able to walk six blocks three times per day. See Tr. 28 (can walk five blocks to child's school

REPORT AND RECOMMENDATION - 8

and back, sitting for "a few minutes" halfway), 117 (can walk 300 yards, but needs five to ten minutes of rest before resuming), 186 (is able to walk about 10 blocks one to two times per day, despite severe pain it causes), 175 (continues to walk son six blocks to and from school five days per week); but see Tr. 172 (exercises three times every day with son, "6 blocks a day.").  As such, it is far from clear in regard to the ability to walk that plaintiff is as active as the ALJ found her to be or that she is able to engage in the full range of sedentary work. See SSR 96-9p, 1996 WL 374185 *3 (noting sedentary work requires being able to walk and stand up to one-third of time, generally no more than about two hours in eight-hour workday).

Also unsupported is the ALJ's statement that Dr. Lower's assessment that plaintiff cannot do any lifting is inconsistent with plaintiff's "ability to function independently." Tr. 18.  It is not clear what the ALJ meant by the term "independently" here, particularly given that, as discussed above, the record fails to definitively show she engages in a level of activity consistent with the ability to perform at least sedentary work.  On the other hand, her testimony and self-reports for the most part indicate she is able to lift at the level required by sedentary work. See Tr. 117 (does not lift over 10 pounds), 135 (same); but see Tr. 29 (testifying she cannot lift bags when grocery shopping, without indicating specific weight thereof); see also SSR 96-9p, 1996 WL 374185 *3 (full range of sedentary work requires lifting no more than 10 pounds at one time, and occasional lifting or carrying of articles like docket files, ledgers, and small tools).  But because the ALJ did not specifically discuss plaintiff's testimony or self-reports in regard to the ability to lift, it is not possible to know if this ability is what the ALJ meant by the term "independently" or if he even considered it as a basis for rejecting the no lifting restriction.

Lastly, as noted above, the ALJ rejected the opinions of Dr. Lower, Dr. Doeffler and Ms. Jakovec on the basis that those opinions "involve vocational issues of which [these sources] have

REPORT AND RECOMMENDATION - 9

no expertise." Tr. 18.  Plaintiff does not argue this point, but asserts that each of these sources are qualified to express their opinion regarding her functional limitations.  The Court agrees, and this is so even in regard to the opinion of Ms. Jakovec, a non-physician, since evidence from "other sources" – including other "medical sources" such as nurse practitioners – may be used to "show the severity" of a claimant's impairments and their effect on the claimant's ability to work. 20 C.F.R. § 404.1513(d), § 416.913(d); see also SSR 06-03p, 2006 WL 2329939 *3 (providing that opinions from these other medical sources are important, and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in record).

This reason thus is inadequate to reject at least the actual functional limitations found by the above three medical opinion sources, and therefore the ALJ erred to the extent he relied on it to do so.  In addition, because none of the reasons the ALJ provided for rejecting those opinions are valid, the ALJ further erred in giving "[g]reater weight . . . to the opinion of the State agency [medical] consultants, who opine[d that plaintiff was] capable of sedentary work." Tr. 18.  That is, the ALJ has pointed to no "other independent evidence in the record" consistent with the non-examining consultant opinions, such that those opinions not only constitute substantial evidence, but they also are sufficient to overcome the opinions of both Dr. Lower, a treating physician, and Dr. Doeffler, an examining physician, which generally are entitled to greater weight. See Lester, 81 F.3d at 830-31; see also Tonapetyan, 242 F.3d at 1149.

B.    Dr. Litman

Plaintiff also challenges the following findings made by the ALJ:

The claimant underwent a psychological evaluation on August 18, 2006. Mental status examination was normal but on psychological testing she seemed to struggle in verbal comprehension and verbal reasoning.  Jack M. Litman, Ph.D., indicated she had basic abilities to reason and make decisions. She functioned on somewhat of a concrete level but could understand what to do in situations which were not too complicated. (Exhibit 14F).  The opinion

> of Dr. Litman concerning the claimant's mental abilities is given significant
> weight.  Although he expressed concerns regarding the claimant's
> employability due to physical issues, this assessment is outside his area of
> expertise and is given little weight. . . .

Tr. 18.  Specifically, plaintiff argues the ALJ erred in failing to mention Dr. Litman's "clinical

observation" that she belched as often as 15 seconds and took frequent bathroom breaks during

the interview. ECF #20, p. 4; see also Tr. 256.  But the Court finds the ALJ was not remiss in

failing to specifically mention these observations, as they are not "clinical" in the sense that is

normally applied to licensed practitioners in the field of psychology (i.e., observations as they

pertain to the individual's mental functional capabilities), and the ALJ correctly noted that any

concerns Dr. Litman had regarding plaintiff's employability due to physical issues were outside

of his expertise.

   Equally without merit is plaintiff's assertion that the ALJ should have expressly noted Dr.

Litman's assessed IQ scores, as Dr. Litman did not specifically link any functional limitations to

those scores, although as noted above, Dr. Litman did state that the GAF score of 45 he assessed

approximated borderline intelligence and a borderline learning disorder causing future work-

related problems, with respect to which, as discussed above, the Court has found the ALJ erred

in not addressing. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (mere existence of

an impairment is insufficient proof of disability).  For the same reason, the Court also finds that

the ALJ did not err merely because he did not specifically mention the actual diagnoses made by

Dr. Litman – again, except, as discussed above, in regard to the somatoform disorder – especially

given that the ALJ did find plaintiff's depression to be severe. See Tr. 15, 262.

   Lastly, while it is true that Dr. Litman opined that "[a]t this point," plaintiff's "outlook"

was "very poor to nonexistent with it being unknown post-surgery" (Tr. 263), but this statement

clearly was made in reference to plaintiff's physical impairments, which, as just discussed, the

REPORT AND RECOMMENDATION - 11

1    ALJ properly discounted as being outside of Dr. Litman's expertise.  Defendant argues the ALJ

2    did not err at all in regard to Dr. Litman's opinion, noting Dr. Litman also found in relevant part

3    that:

> Ms. Dahlin has basic abilities to reason and make correct decisions.  She
> functions on somewhat of a concrete level, which is not surprising given her
> cognitive abilities.  Nonetheless, she understands the correct thing to do and
> should do that if the situation does not become too complicated for her.

Id.  But this medical source statement does not necessarily fully cover the implied limitations the

low GAF score assessed by Dr. Litman indicates.  In addition, it is not entirely clear what Dr.

Litman meant in stating that plaintiff had "basic abilities" to reason and make correct decisions,

that she was able to function "on somewhat of a concrete level" or that she could understand the

correct thing to do or should do if the situation did "not become too complicated for her."  Nor is

it at all clear that the limitation to being able to focus on small tasks the ALJ adopted necessarily

encompasses this aspect of Dr. Litman's opinion.

C.    Ms. Chewning

The record also contains an adult mental health intake assessment form completed in late

September 2007, by Susan Chewning, a mental health counselor, who assessed plaintiff with a

GAF score of 50 at the time. See Tr. 290.  As noted above, a GAF score of 41 to 50 indicates the

presence of serious symptoms or a serious impairment in the individual's social or occupational

functioning, such as inability to keep a job. Pisciotta, 500 F.3d at 1076 n.1; see also England, 490

F.3d at 1023, n.8 (GAF score of 50 reflects serious limitations in individual's general ability to

perform basic tasks of daily life).  Also as noted above, "other sources" may be used to show the

severity of a claimant's impairments and the effect they have on the claimant's ability to work.

20 C.F.R. § 404.1513(d), § 416.913(d).  Accordingly, the Court agrees with plaintiff that the ALJ

erred in failing to discuss at all the GAF score Ms. Chewning assessed.

REPORT AND RECOMMENDATION - 12

1    Defendant argues the GAF score Ms. Chewning assessed "was not particularly probative

2    in light of the ALJ's discussion of the treatment record as a whole," and thus does not constitute

3    significant probative evidence the ALJ was required to address. ECF #19, p. 8.  But as discussed

4    above, the ALJ erred in discussing the treatment record regarding plaintiff's mental impairments

5    and limitations, including the GAF score assessed by Dr. Litman, which is even lower than that

6    assessed by Ms. Chewning.  Taken together – or even when viewed by themselves as discussed

7    above – these GAF scores do constitute significant probative evidence, even though there may be

8    an additional GAF score in the record higher than these two. <u>See</u> Tr. 171 (examining psychiatrist

9    assessing GAF score of "60 plus"[2]).  Rather, especially in light of this disparity in GAF scores in

10   the record, the ALJ had a duty to address them and resolve the discrepancy.

11

12   III.    <u>The ALJ's Assessment of Plaintiff's Credibility</u>

13          Questions of credibility are solely within the control of the ALJ. <u>See</u> <u>Sample</u>, 694 F.2d at

14   642.  The Court should not "second-guess" this credibility determination. <u>Allen</u>, 749 F.2d at 580.

15   In addition, the Court may not reverse a credibility determination where that determination is

16   based on contradictory or ambiguous evidence. <u>See</u> <u>id.</u> at 579.  That some of the reasons for

17   discrediting a claimant's testimony should properly be discounted does not render the ALJ's

18   determination invalid, as long as that determination is supported by substantial evidence.

19   <u>Tonapetyan</u>, 242 F.3d at 1148.

20          To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

21   reasons for the disbelief." <u>Lester</u>, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what

22

23

24

---

25   [2] "A GAF of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers

26   or co-workers).'" <u>Tagger v. Astrue</u>, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) ("DSM-IV") at 34).  "A GAF score of 61-70 reflects mild symptoms or "some difficulty" in those areas, but the individual 'generally function[s] pretty well.'" <u>Sims v. Barnhart</u>, 309 F.3d 424, 427 n.5 (7th Cir. 2002) (quoting DSM-IV at 30).

REPORT AND RECOMMENDATION - 13

1   testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also

2   Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the

3   claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear

4   and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of

5   malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

6       In determining a claimant's credibility, the ALJ may consider "ordinary techniques of

7   credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

8   symptoms, and other testimony that "appears less than candid." Smolen, 80 F.3d at 1284.  The

9   ALJ also may consider a claimant's work record and observations of physicians and other third

10  parties regarding the nature, onset, duration, and frequency of symptoms. See id.

11      In terms of plaintiff's credibility, the ALJ stated as follows:

12
13      Treatment records support the claimant's allegations concerning exertional
        limitations.  The claimant has a history of unsuccessful operations for
14      recurrent ventral hernia.  Surgeons have indicated no further surgery can be
        performed until her obesity is addressed. She has undergone evaluation for
15      gastric bypass surgery to address morbid obesity but surgery has not been
        scheduled. (Exhibits 2F, 3F).  The claimant reports nausea, urinary
16      incontinence, increased belching, and significant fatigue related to ventral
        hernia. (Exhibits 3F-19, 15F-7-8).  She has been treated with Naproxen and
17      Vicodin for pain.  While the claimant may rest during the day, there is no
        evidence this is a medical necessity when engaged in sedentary types of
18      activities.  Despite her symptoms she is able to care for her son, walk 6 blocks
        three times a day, do laundry and household chores, attend church once or
19      twice a week, go to cub scouts with her son on a weekly basis, and swim 2 or
        3 times a week (Exhibits 4E, 2F).
20
21
22  Tr. 17.  Plaintiff argues the ALJ erred in assessing her credibility here.  The Court agrees.  First,

23  the ALJ's statement that there is no evidence of a medical necessity to rest during the day when

24  engaged in sedentary activities is not fully supported in the record.

25      Dr. Lower, for example, opined in early May 2005, that plaintiff had a "need for frequent

26  breaks due to pain," without any indication that such a need did not apply when she was engaged

REPORT AND RECOMMENDATION - 14

1 in sedentary activities. Tr. 277.  In early December 2005, Dr. Lower stated that plaintiff was not

2 able to work in part due to her fatigue, which was "not conducive to <u>any</u> work activities," at least

3 until her hernia problem was resolved. Tr. 272 (emphasis added).  In mid-December 2006, Dr.

4 Lower opined that plaintiff needed "to rest most of the day" due in part to "difficulty sleeping,"

5 again without restricting this need to non-sedentary activities only. Tr. 265.  These statements

6 constitute significant probative evidence that tend to support plaintiff's claims at least in part,

7 particularly given, as discussed above, that the ALJ erred in evaluating the medical evidence in

8 the record provided by Dr. Lower.

9

10       Defendant argues the ALJ did not err here, because plaintiff testified that she did not take

11 naps during the day, but just preferred to lie down for half-hour intervals, and that she did not lie

12 down on those days when she had to go to appointments.  But as plaintiff points out, the issue is

13 not whether it is medically necessary for her to take naps, but whether the record supports such a

14 need to rest.  Nor does the Court find plaintiff's testimony concerning not taking naps during the

15 day to necessarily be inconsistent with a need to lie down due to poor sleep, since if plaintiff had

16 poor sleep, she would not necessarily be able to sleep during the day as well, but could still need

17 to rest due to fatigue or tiredness resulting from lack of sleep.  Most importantly, however, is that

18 defendant ignores the fact that the ALJ found no evidence in the record of a "medical necessity"

19 here, whereas Dr. Lower's statements indicate the opposite.

20

21       The Court further agrees with plaintiff that the activities the ALJ pointed to as evidence

22 of her ability to engage in sedentary types of activities, and therefore of her lack of credibility in

23 regard to her alleged inability to work, is not supported by substantial evidence in the record.  As

24 discussed above, the ALJ erred in finding the activities he sets forth in his decision are consistent

25 with a capacity for at least sedentary work with positional changes.  Accordingly, the ALJ could

26

REPORT AND RECOMMENDATION - 15

not rely on this basis also for discounting plaintiff's credibility regarding her ability to perform at that level of exertional functioning. See Smolen, 80 F.3d at 1284 n.7 (claimant's testimony may be rejected only if he or she is able to spend substantial part of day performing household chores or other activities that are transferable to work setting).

IV.    The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the [sequential disability] evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.  It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Here, the ALJ assessed plaintiff with the following residual functional capacity:

**. . . [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967 (a) except she can walk 2 blocks at a time, stand 20 minutes at a time and sit 30 minutes at a time.  She can lift 10 pounds. Pushing and pulling is limited to opening and closing of drawers.  She can climb 1 or 2 steps using a hand rail.  Due to fatigue she functions at 80% of a typical person her**

REPORT AND RECOMMENDATION - 16

**age.  She is able to focus on small tasks.**

Tr. 16 (emphasis in original).  Plaintiff argues this RFC assessment is improper, because the ALJ failed to include therein all of the limitations found by Dr. Lower and Dr. Litman and described by her in her own testimony.  The Court agrees that given that, as discussed above, the ALJ erred in evaluating the medical evidence in the record from these two medical sources and in assessing plaintiff's credibility, it is not at all clear that the above residual functional capacity assessment is completely accurate.

Plaintiff further argues the ALJ erred in failing to include in that RFC assessment all the mental functional limitations assessed by two non-examining, consulting psychologists, Kristine Harrison, Psy.D., and Bruce Eather, Ph.D.  Specifically, the record contains a mental residual functional capacity assessment form in which they found plaintiff was moderately limited in her ability to: maintain attention and concentration for extended periods, complete a normal workday and workweek, perform at a consistent pace, and interact appropriately with the general public.  See Tr. 216-17, 253.  The only discussion the ALJ made in regard to the medical evidence from Dr. Harrison and Dr. Eather, was to state that the ability "to focus on simple types of tasks . . . is consistent with" their mental functional assessment.  See Tr. 18.  The Court agrees, however, that the ALJ erred in failing to explain why he did not accept all of their mental functional limitations or include them in the residual functional capacity assessment he provided.

Defendant argues the ALJ reasonably accommodated the moderate functional limitations assessed by Drs. Harrison and Eather, but the only mental functional limitations the ALJ appears to have adopted and included in his RFC assessment are the one concerning the ability to focus on small tasks, and the limitation to functioning at 80% of a typical person her age due in part to fatigue from her depression.  See Tr.16, 38.  As with the small tasks limitation, however, it is not

REPORT AND RECOMMENDATION - 17

at all clear that the latter limitation encompasses all those assessed by Drs. Harrison and Eather, even if, as argued by defendant, the public interaction restriction is adequately addressed by the fact that none of the jobs the vocational expert identified that plaintiff could perform involve public contact.  But even here, given that the ALJ's residual functional capacity assessment was erroneous for all the reasons discussed above, it again is not at all clear that the vocational expert would still find plaintiff was able to perform those jobs given a new assessment that is free from error and accurately reflects plaintiff's capabilities.

Plaintiff next argues the ALJ's RFC assessment is further inconsistent with the medical evidence in the record, because while the ALJ noted with approval the opinions of Dr. Litman and George Mecouch, D.O., and the testimony of the medical expert at the hearing, all of which he found supported an ability to focus on simple tasks, the ALJ actually found plaintiff was able to focus on small tasks in the actual residual functional capacity assessment.  See Tr. 16, 18.  It is unclear, though, that the ALJ actually intended to limit plaintiff to being able to focus on "small" as opposed to "simple" tasks, given that none of the medical sources in the record provided any opinion as to plaintiff's ability to perform the former.  Rather, it appears this may just have been a typo on the ALJ's part.

Nevertheless, because, as discussed herein, this matter should be remanded for further administrative proceedings, any ambiguity regarding the ALJ's intent here should be addressed and resolved as well.  On the other hand, the undersigned agrees that the ALJ erred in failing to include in plaintiff's RFC assessment the moderate impairment the medical expert testified to at the hearing in regard to concentration, persistence and pace (see Tr. 36), even though the ALJ stated, as noted above, that he found this testimony was consistent with a limitation to focusing on simple tasks.  This is because it is not entirely clear that the moderate impairment testified to

REPORT AND RECOMMENDATION - 18

by the medical expert equates with a limitation to simple tasks.

V.      The ALJ's Step Four Determination

At step four of the sequential disability evaluation process, the ALJ found plaintiff to be capable of returning to her past relevant work as a telemarketer. See Tr. 18.  Plaintiff argues the ALJ erred in making this determination, because the hypothetical question the ALJ posed to the vocational expert at the hearing included "the ability to focus attention on . . . little" as opposed to "simple" projects. Tr. 38.  In other words, plaintiff is alleging the same error in regard to this functional category that he did with respect to the ALJ's residual functional capacity assessment. Plaintiff has the burden at step four to show that she is unable to return to her past relevant work. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).  She has met it here.

As discussed above, none of the medical sources in the record have provided an opinion as to plaintiff's ability to perform "small" or "little" projects as opposed to "simple" tasks.  Thus, here too it is not at all clear that the hypothetical question the ALJ posed to the vocational expert accurately reflects all of plaintiff's mental functional limitations.  Defendant argues the ALJ did not err here, as the term "small tasks" – and presumably "little projects" as well – is synonymous with the term "simple tasks" in the context of this case.  But a "simple" tasks is not necessarily a "small" or "little" one and vice versa.  While it may be as defendant asserts, it is unclear whether the ALJ believed them to be one and the same.  Rather, as indicated above, remand for additional clarification of this issue is needed.

Plaintiff goes on to argue the ALJ also erred in finding she was capable of performing the telemarketer job, because he failed to note that a limitation to "small" or "simple" tasks is not consistent with the level of reasoning the Dictionary of Occupational Titles states is required for an individual to perform that job.  Specifically, the DOT states the job of telemarketer requires a

REPORT AND RECOMMENDATION - 19

1    reasoning level of 3 (see DOT 299.357-014, 1991 WL 672624), which is above that required for

2    simple work.  The DOT defines Level 3 reasoning as follows:

3            Apply commonsense understanding to carry out instructions furnished in
             written, oral, or diagrammatic form.  Deal with problems involving several
4            concrete variables in or from standardized situations.

5    Id.; DOT, Appendix C, 1991 WL 688702; see also Hackett v. Barnhart, 395 F.3d 1168, 1176

6
7    (10th Cir. 2005) (finding ability to perform simple and routine work tasks to be inconsistent with

8    level 3 reasoning).

9            Defendant argues that the DOT definition of the telemarketer job is irrelevant here, as the

10   Ninth Circuit has recognized the DOT as "the best source for how a job is generally performed,"

11   whereas in this case the ALJ based his step four determination on how the telemarketer job was

12
13   actually performed by plaintiff. Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155,

14   1166 (9th Cir. 2008) (citation omitted); see also Tr. 18.  Plaintiff does not challenge or respond

15   to defendant's assertion that the DOT is inapplicable here in light of the Ninth Circuit's decision

16   in Carmickle.  Accordingly, since it does appear that the Ninth Circuit views the DOT as being

17
18   applicable – or at least more applicable – to those situations where consideration is given to how

19   a job is generally rather than actually performed, the undersigned finds no error on the part of the

20   ALJ in failing to compare the vocational expert's testimony to the DOT here.

21           Plaintiff argues in her reply brief that there is no substantial evidence in the record that

22   she ever performed her job as a telemarketer long enough to be considered past relevant work.

23   But this issue was not raised in plaintiff's opening brief. See Carmicle, 533 F.3d at 1161 n.2

24   (issue not argued with specificity will not be addressed); see also Paladin Associates., Inc. v.

25   Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in

26   opening brief, objection to district court's ruling was waived); Kim v. Kang, 154 F.3d 996, 1000

REPORT AND RECOMMENDATION - 20

1   (9th Cir.1998) (matters not specifically and distinctly argued in opening brief ordinarily will not

2   be considered).  Nor can it be said that the issue of plaintiff's telemarketer job as it was actually

3   performed was first raised in defendant's response brief, since, as noted above, the ALJ clearly

4   stated in his decision that he found plaintiff was capable of returning to that job as it was actually

5   performed. See Tr. 18.  This argument, therefore, shall not be considered here.

6   VI.    Step Five of the Sequential Disability Evaluation Process

7          If a claimant cannot perform his or her past relevant work at step four of the sequential

8   disability evaluation process, at step five the ALJ must show there are a significant number of

9   jobs in the national economy the claimant is able to do. See Tackett, 180 F.3d at 1098-99; 20

10  C.F.R. § 404.1520(d), (e), § 416.920(d), (e).  In this case, because the ALJ made his disability

11  determination at step four – albeit erroneously as discussed herein – he was not required to then

12  proceed on to step five.[3]  Plaintiff argues, however, that when the vocational expert was asked

13  about a hypothetical individual who had to recline with his or her feet up at least twice a day for

14  30 minutes or more at a time, the vocational expert testified that such an accommodation would

15  not be allowed "in competitive activities." Tr. 40.  But it is not clear, even given the ALJ's errors

16  in evaluating the medical and other evidence discussed above, that the ALJ would be required to

17  adopt such a limitation.  Accordingly, the undersigned declines to find at this time that the ALJ

18  was required to find her disabled at step five.

19  VII.   This Matter Should Be Remanded for Further Administrative Proceedings

20         The Court may remand this case "either for additional evidence and findings or to award

21  benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the

22  proper course, except in rare circumstances, is to remand to the agency for additional

---

[3] See 20 C.F.R. § 404.1520 (if claimant is found disabled or not disabled at any particular step thereof, disability determination is made at that step, and sequential evaluation process ends) see also 20 C.F.R. § 416.920.

REPORT AND RECOMMENDATION - 21

1    investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations

2    omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is

3    unable to perform gainful employment in the national economy," that "remand for an immediate

4    award of benefits is appropriate." Id.

5            Benefits may be awarded where "the record has been fully developed" and "further

6    administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan

7    v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded

8    where:

9
10           (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the
             claimant's] evidence, (2) there are no outstanding issues that must be resolved
11           before a determination of disability can be made, and (3) it is clear from the
             record that the ALJ would be required to find the claimant disabled were such
12           evidence credited.

13   Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

14   Because issues remain with respect to the medical evidence in the record, plaintiff's credibility,

15   her residual functional capacity and her ability to perform her past relevant work and other jobs

16   existing in significant numbers in the national economy, the Court should remand this matter to

17   defendant for further administrative proceedings.

18
             Plaintiff argues Dr. Lower's opinion should be credited as true.  It is true that where the

19   ALJ has failed "to provide adequate reasons for rejecting the opinion of a treating or examining

20   physician," that physician's opinion generally is credited "as a matter of law." Lester, 81 F.3d at

21
22   834 (citation omitted).  However, where the ALJ is not required to find the claimant disabled on

23   the crediting of evidence, this constitutes an outstanding issue that must be resolved, and thus the

24   Smolen test will not be found to have been met. See Bunnell v. Barnhart, 336 F.3d 1112, 1116

25   (9th Cir. 2003).  Here, while as discussed above the ALJ failed to provide valid reasons for not

26

REPORT AND RECOMMENDATION - 22

adopting Dr. Lower's opinions regarding inability to lift or work, it is not entirely clear the ALJ would be required to find plaintiff disabled based on those opinions.

Many of the inability to work opinions Dr. Lower provided, for example, are for far less than the durational period required to establish disability or at least only until further treatment was available. See Tr. 204, 267-68, 272, 274-80, 284, 287.  While there is a question, as noted by the ALJ, as to when such treatment would, if ever, be available (Tr. 17, 199, 270-71, 283), this is an open issue that is more appropriate for defendant to address on remand.  As for the restriction on lifting, as discussed above, plaintiff's own self-reports indicate she believes she can lift some weight, even up to that required for sedentary work.  Further, "[i]n cases where the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence" as here, the Ninth Circuit  "consistently [has] remanded for further proceedings rather than payment of benefits." Bunnell, 336 F.3d at 1116.

It also is true that the Ninth Circuit has held that remand for benefits is required where the ALJ's reasons for discounting the claimant's credibility are not legally sufficient, and "it is clear from the record that the ALJ would be required to determine the claimant disabled if he had credited the claimant's testimony." Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003).  The Court of Appeals in Connett went on to state, however, that it was "not convinced" the "crediting as true" rule was mandatory. Id.  Thus, at least where the findings are insufficient as to whether a claimant's testimony should be "credited as true," it appears the courts "have some flexibility in applying" that rule. Id.; but see Benecke v. Barnhart, 379 F.3d 587, 593, 595-96 (9th Cir. 2004) (applying credit as true rule where it was clear that remand for further administrative proceedings would serve no useful purpose, but noting contrary holding in Connett).

As discussed above, it is not entirely clear that a finding of disability would be required

REPORT AND RECOMMENDATION - 23

based on the improperly discredited medical evidence in the record.  In addition, with respect to plaintiff's credibility, while the ALJ's stated bases for discounting it are not legitimate for the reasons discussed above, again it is not entirely clear that the ALJ would have make a finding of disability based on plaintiff's testimony and subjective complaints.  Thus, for example, while the activities of daily living noted by the ALJ were not sufficient to necessarily establish an ability to perform sedentary work in themselves, there is evidence that plaintiff could walk farther than her allegation of total disability would imply.  Thus, further consideration of plaintiff's credibility on this and her other testimony by defendant is required as well.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse defendant's decision and remand this matter to defendant for the purpose of conducting further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. <u>See</u> <u>also</u> Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **April 1, 2011**, as noted in the caption.

DATED this 14th day of March, 2011.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 24